the petitioners were not entitled to preference over the general creditors; that, to authorize such a preference, some specific recognized equity, founded on some agreement or relation of the debt to the assigned property, must be shown, which entitled the claimant, according to equitable principles, to preferential payment. The decision was not put upon the ground that the identical money could not be traced into the hands of the assignee, but that, as said by Andrews, J.: "The trust fund, with the single exception mentioned, was misappropriated by White to the payment of his private debts prior to the assignment. It cannot be traced into the property in the hands of the assignee, for the plain reason that it is shown to have gone to the creditors of White in satisfaction of their debts." In reply to the suggestion that, by the application of the fund to the payment of White's creditors, the assigned estate was relieved pro tanto from debts which would otherwise have been charged upon it, and thereby the general creditors, if entitled to distribution, without regard to the petitioner's claim, would be benefited, he says: "We think this is quite too vague an equity for judicial cognizance, and we find no case justifying relief upon such a circumstance." The application of the rule to the facts existing here is expressly recognized in the opinion of Judge Andrews, where he says: "If it appears that trust property specifically belonging to the trust is included in the assets, the court, doubtless, may order it to be restored to the trust. So, also, if it appears that trust property has been wrongfully converted by the trustee, and constitutes, although in a changed form, a part of the assets, it would seem to be equitable, and in accordance with equitable principles, that the things into which the trust property has been changed should, if required, be set apart for the trust, or, if separation is impossible, that priority of lien should be adjudged in favor of the trust estate for the value of the trust property, or funds or proceeds of the trust property, entering into and constituting a part of the assets. This rule simply asserts the right of the true owner to his own property." And that is, as already stated, the case here. The plaintiff is entitled to the relief demanded in the complaint, with costs.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and McLENNAN, JJ.

C. W. Kimball, for appellant.

Huson & Dwelle, for respondent.

PER CURIAM. Judgment affirmed, with costs, on the opinion of NASH, J., delivered at the equity term. All concur, except WARD, J., not voting.

(42 App. Div. 576.)

UNION BANK OF BUFFALO v. PARSONS et al.

(Supreme Court, Appellate Division, Fourth Department. July 18, 1899.)

SUBROGATION—MARSHALING SECURITIES—ELECTION BETWEEN FUNDS.

A bank held a mortgage, and also notes signed by the mortgagor and another; the makers, as between themselves, being under obligation to discharge their debt on the notes in equal proportions. Another creditor had recovered a judgment against the mortgagor, which was a second lien on the mortgaged property. *Held* that, on an election by the bank to collect its debt from the mortgaged property, the judgment creditor was entitled to be subrogated to the rights of the bank on its notes against the second maker, to the extent that the mortgagor could have enforced contribution.

Appeal from special term, Erie county.

Action by the Union Bank of Buffalo against Conroy and others for foreclosure of a mortgage. Appeal from an order setting aside the answer of defendant Parsons as frivolous. Reversed.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, and NASH, JJ.

Chas. B. Wheeler, for appellant.

August Becker, for respondents.

NASH, J. The bank holds Conroy's mortgage and the notes of Conroy, E. T. Johnson, and W. H. Johnson as security for the same debt. The defendant Parsons has a judgment against Conroy, W. H. Johnson, and Henry J. Wilkes, which is a subsequent lien upon the mortgaged premises, as security for his debt. He alleges in his answer that as between Conroy, W. H. Johnson, and E. T. Johnson, the makers of the note held by the bank, they are under obligations to discharge an equal proportion of their indebtedness upon the notes. The bank is in the position of a creditor having two funds, to which it may resort for payment, and elects to foreclose its mortgage. The case is therefore within the rule as stated by Judge Redfield in his notes to 1 Story, Eq. Jur. (10th Ed.) p. 629:

"Wherever a creditor, by his election to take one of two funds, to which alone another creditor has the right to resort, deprives the latter of his claim to that fund, he will be permitted in equity to stand in the place of that creditor in regard to the other fund."

If the bank had brought an action upon the notes, and thereby satisfied the debt, it would have released its mortgage lien prior to Parsons' judgment, to that extent. If the defendant Parsons is subrogated in accordance with the prayer of his answer, and by the foreclosure the notes are paid, Parsons, as the equitable assignee of the bank, can recover of E. T. Johnson the amount of his liability to Conroy; otherwise, Parsons loses the lien of his judgment, and, as there is no privity of contract between Parsons and Johnson, the former is remediless as against the latter. The right of Parsons to proceed against Johnson can only be acquired by subrogation. The promissory notes, in case of the subrogation of Parsons as proposed, will not be extinguished by the satisfaction of the debt to the bank. Hubbell v. Blakeslee, 71 N. Y. 63. The presence of Johnson as a party to this action is not required. His rights will not be affected by the judgment or the transfer of the notes to Parsons. The latter takes the notes simply to enforce Conroy's right to contribution as against E. T. Johnson. In this manner justice may be done to all parties, the bank will not be delayed in the foreclosure of its mortgage, the indebtedness of Conroy and the Johnsons to the bank may be paid, E. T. Johnson will pay his indebtedness to Conroy, and the amount of the latter will be applied upon Parson's judgment against Conroy.

Order reversed, with $10 costs and disbursements, and motion denied, with $10 costs. All concur.